(C. D. 964)

Pacific Vegetable Oil Corp. *v.* United States

United States Customs Court, Third Division

(Decided November 9, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Herbert M. Rosenberg*, special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Keefe, Judge: The merchandise before us here consists of an importation of sesame seed from India, which was liquidated free of duty under paragraph 1727 of the Tariff Act of 1930. An internal

revenue tax of 1.18 cents per pound, however, was imposed under section 2491 (d) of the Internal Revenue Code.

The plaintiff in its protest sets out the following claims:

Duty should have been assessed on the net weight of the sesame seed and should not have included the weight of the foreign substances mixed therewith. Such substances are alternatively claimed to be dutiable by virtue of section 508, at 5 percent under par. 731 (screenings, etc.).

At the trial it was established that the public weighers of the merchandise had delivered a sample to a chemist's establishment to an employee having authority to receive the same; and that a quantitative analysis was made of the merchandise, purported to have been so delivered, showing that the sesame seed contained 4.89 per centum of dirt and chaff and .07 per centum of foreign seeds.

The plaintiff's plant superintendent testified that he had been milling oil-bearing seeds for 37 years and the meaning of the word "screenings" in the seed milling business comprehends impurities removed in the screening process, including dirt, chaff, straw, and foreign seeds other than the milling product.

An importer of sesame seed testified for the Government that he knew personally from examinations made of imported sesame seeds over a long period of years that the usual or average of impurities in India sesame seed, when received from a good shipper, was from 1½ to 2½ per centum, and, when received from a poor shipper, the usual quantity of impurities might be as high as 5 per centum; and that such impurities consisted of silica and a little chaff and foreign seeds. When interrogated as to the meaning of the word "screenings," the witness also testified that it covers all that is taken out of a commodity by the screening process, and that the 5 per centum of impurities removed from the sesame seed through the screening process would represent screenings, the witness, in that regard, stating "We call it screenings because it is all screened, you know." (Record p. 32.)

The plaintiff contends that the weight of the foreign substance mixed with the seeds should not have been included in the liquidated weight to which the tax of 1.18 cents per pound is applicable, and alternatively, that the waste substance screened from the sesame seed should have been assessed for duty at 5 per centum ad valorem under paragraph 731 of the Tariff Act of 1930, as screenings.

The Government contends that the plaintiff has failed to establish that the merchandise analyzed by the commercial chemists was taken from the imported merchandise in question; that the plaintiff is not entitled to any allowance for dirt or other impurities in any kind of seeds under the Tariff Act of 1930 because of the special prohibition of such allowance contained in paragraph 763 of the Tariff Act of 1930; and that the 4.89 per centum of screenings in the merchandise is not screenings within the meaning of the tariff act and the .07 per centum of foreign seeds is too insignificant for consideration.

PAR. 1727 (free list) Oil-bearing seeds and nuts: Copra * * * perilla and sesame seed; seeds and nuts, not specially provided for, when oils derived therefrom are free of duty.

PAR. 763. Grass seeds and other forage crop seeds: * * * *Provided*, That no allowance shall be made for dirt or other impurities in seed of any kind.

PAR. 731. Screenings, scalpings, chaff, or scourings of wheat, flaxseed, or other grains or seeds: Unground, or ground, 10 per centum ad valorem: *Provided*, That when grains or seeds contain more than 5 per centum of any one foreign matter dutiable at a rate higher than that applicable to the grain or seed the entire lot shall be dutiable at such higher rate.

## SEC. 508. COMMINGLING OF GOODS.

Whenever dutiable merchandise and merchandise which is free of duty or merchandise subject to different rates of duty are so packed together or mingled that the quantity or value of each class of such merchandise can not be readily ascertained by the customs officers, the whole of such merchandise shall be subject to the highest rate of duty applicable to any part thereof, unless the importer or consignee shall segregate such merchandise at his own risk and expense under customs supervision within ten days after entry thereof, in order that the quantity and value of each part or class thereof may be ascertained.

The provisions of Title 26, Internal Revenue Code, applicable to the question before us, read as follows:

### § 2490. IMPOSITION OF TAX.

In addition to any other tax or duty imposed by law, there shall be imposed upon the following articles imported into the United States, unless treaty provisions of the United States otherwise provide, a tax at the rates set forth in section 2491, to be paid by the importer. (53 Stat. 267.)

### § 2491. RATE OF TAX.

· * * * * * * *

(d) Hempseed, 1.24 cents per pound; perilla seed, 1.38 cents per pound; kapok seed, 2 cents per pound; rapeseed 2 cents per pound; and sesame seed, 1.18 cents per pound;

* * * * * * *

### § 2493. ASSESSMENT AND PAYMENT.

The tax imposed under section 2490 shall be levied, assessed, collected, and paid in the same manner as a duty imposed by the Tariff Act of 1930, and shall be treated for the purposes of all provisions of law relating to the customs revenue as a duty imposed by such Act, * * *

We are of the opinion that plaintiff's claim that the foreign substance in the sesame seed should not have been assessed with tax as part of the net weight of the product is untenable. No claim is made in the protest that the impurities in question are within the purview of section 507, where any allowance for impurities is prohibited except that of excessive moisture and impurities not usually found in or upon such or similar merchandise. The case of *Seeberger* v. *Wright*, 157 U. S. 183, relied upon by the plaintiff, is not in point because that case involved tare and draft and there was no administrative provision correlative to section 507. Our appellate court in *Shallus* v. *United States*, 1 Ct. Cust. Appls. 316, T. D. 31408, construed the *Wright* case as holding that only the extraordinary im-

purities such as are uncommonly present in merchandise as bought and sold in trade and commerce are the subject of an allowance for dutiable purposes. Any other interpretation of the *Wright* case, under the present tariff act, would be inoperative in view of the administrative provisions of the act.

Even though the claims in this case were confined to the return of the tax taken upon impurities uncommonly present in sesame seed, the plaintiff could not prevail because seeds are specifically removed from the exception in section 507 by the proviso in paragraph 763, prohibiting allowance "for dirt or other impurities in seed of any kind." Such a proviso is not confined to the seeds provided for in paragraph 763 but invades every other paragraph of the act so that any allowance for dirt or other impurities in seeds of any kind may not be made, irrespective of whether or not such impurities may be deemed to be excessive. (See *Stone* v. *United States*, 2 Ct. Cust. Appls. 46, T. D. 31593.) In view of section 2493, *supra*, the proviso to paragraph 763 is extended to include imported merchandise subject to an internal revenue tax. Therefore, an allowance for impurities in the seeds in question may not be granted under any provision of the Internal Revenue Act.

The next question presented is whether the impurities are of such character as would invite a segregation under the provisions of section 508 in order that a different rate of duty may be applied. We are of the opinion that the plaintiff is not entitled to a segregation of the merchandise upon the theory that the impurities contained in the sesame seed are screenings. The difference between impurities in seeds and the tariff designation for "screenings" was quite clearly set out by our appellate court in the case of *Consolidated Elevator Co.* v. *United States*, 8 Ct. Cust. Appls. 267, T. D. 37536. The imported merchandise there consisted of flaxseed, containing percentages of various other seeds, chaff, and foxtail. The court there construed the tariff term "screenings" as a commercial product having a distinct value and a particular use and it confined the term "impurity" to such as had no value and was destroyed. Clearly the tariff meaning of the term "screenings" does not embrace all that is removed from a commodity by a screening process, as that term was defined by the witnesses herein. In view of the foregoing decision, refuse, consisting of seven-hundredths of 1 per centum of foreign seeds, a negligible quantity, and 4.89 per centum of dirt and chaff would not be considered a commercial product, nor is there any evidence before us that the instant refuse was so used.

For the reasons stated we therefore hold that the 4.96 per centum of refuse and foreign seeds in the sesame seed in question is not entitled to a dutiable status as screenings under paragraph 731, *supra*, and consequently does not come within the provisions of section 508, as claimed. Judgment will be entered in favor of the Government.